(December 1, 1892.)

## ELLIOT v. HALL ET AL.

[35 Am. St. Rep. 285, 31 Pac. 796.]

WAGES OR EARNINGS OF DEBTOR—EXEMPTION OF SAME FROM FORCED SALE.—When the statute makes the wages or earnings of a debtor exempt from levy of execution or attachment, such exemption continues while such wages or earnings are under control of debtor, although temporarily in the hands of another.

(Syllabus by the court.)

APPEAL from District Court, Elmore County.

Wyman & Wyman, for Appellant.

The fundamental principle and general rule for interpreting statutes granting exemptions is that they, being in furtherance of humanity and the protection of the family, should be liberally construed. (Freeman on Executions, sec. 208; *Estate of McManus,* 87 Cal. 292, 22 Am. St. Rep. 250, and note, 25 Pac. 413; *Montague v. Richardson,* 24 Conn. 347, 63 Am. Dec. 173; *Kuntz v. Kinney,* 33 Wis. 514; *Kenyon v. Baker,* 16 Mich. 373, 97 Am. Dec. 158; *Bevan v. Hayden,* 13 Iowa, 122.) It cannot be claimed that this was a fraudulent conveyance of property, for there was no conveyance or attempt to convey, and for the further reason that there can be no fraudulent conveyance of

exempt property. (Freeman on Executions, sec. 135; *Derby v. Weyrich,* 8 Neb. 174, 30 Am. Rep. 827; *Union Pac. Ry. Co. v. Smersh,* 22 Neb. 751, 3 Am. St. Rep. 290, 36 N. W. 139.)

J. W. Badger, for Respondents.

The proceeds of exempt property are not exempt. Transposition of exempt property destroys or loses the exemption. (*Brackett v. Watkins,* 21 Wend. 68; *Mandlove v. Burton,* 1 Ind. 39; 1 Freeman on Executions, 2d ed., sec. 247; *Wooster v. Page,* 54 N. H. 125, 20 Am. Rep. 128.) If personal property exempt be fraudulently assigned to defraud creditors of the debtor, and be thereafter levied upon by such creditor, the debtor is not entitled to claim the same as exempt. (*State v. Koch,* 40 Mo. App. 635.) If exempt property or goods be so mixed with others that they can no longer be identified, the right of exemption is lost. The claimant must always be able to point out the identical property claimed. (*Smith v. Turnley,* 44 Ga. 245; *Roth v. Wells,* 29 N. Y. 471.) The right to exemption is a personal privilege, and may be waived. (*Homes v. Corbin* (Mo. App.), 4 West. 98.)

HUSTON, J.—The plaintiff was a miner in the employ of the Comfort Consolidated Mining Company. A judgment had been recovered against him in justice's court. Execution was issued thereon, and levied upon a certain sum of money in the hands of one Trevitic. There is no question but that the money so levied upon was the wages of the plaintiff, earned within the thirty days next preceding the date of the levy. Trevitic had drawn the same from the company at the request of plaintiff, and held it for him. Trevitic stated to the officer making the levy (J. N. Hall, the principal defendant) that plaintiff owed him nothing; that he simply drew the money for him as an accommodation, and held it subject to his call. On demand of the officer (Hall) holding the execution, Trevitic delivered the money so held by him to such officer. Plaintiff brings his action against the officer and his sureties for the recovery of the money, claiming the same as exempt from levy, under the provisions of subdivision 7 of section 4480 of the Revised Statutes of Idaho, which is as follows: "The earnings of the judgment

debtor for his personal services rendered at any time within thirty days next preceding the levy of execution, or levy of attachment. when it appears by the debtor's affidavit or otherwise that such earnings are necessary for the use of his family residing in this territory (state), supported wholly or in part by his labor." The necessary affidavits were duly served by plaintiff, establishing the facts required by the section of the statute referred to. Plaintiff recovered judgment in justice's court. Defendants appealed to district court, when the judgment of the justice's court was reversed, and judgment for costs was rendered for defendants, and from the judgment of the district court the plaintiff appeals to this court. There is nothing in the record showing the grounds upon which the district court based its decision and judgment. The case was heard by the district court upon a stipulation as to the evidence. It appears from the plaintiff's motion for a new trial that, while the district court held that the money levied upon by the officer by virtue of the execution was exempt as wages, under the provisions of the statute, the plaintiff had deprived himself of the benefit of the statute by "commingling, or causing to be commingled, said wages, so as to lose their identity as wages." This view seems to be acquiesced in by defendants. The only evidence of a "commingling" is the fact that Trevitic drew this money from the company. for the accommodation of the plaintiff, and held the same for the plaintiff; that plaintiff was not indebted to Trevitic, nor had Trevitic any claim or lien upon the money so drawn.

It is insisted by respondents (1) that the drawing of the money by Trevitic, upon the order or request of plaintiff, was a fraud upon the creditors of plaintiff; (2) that it was such a commingling of the money as deprived it of the exemption provided by the statute. The money being confessedly exempt as wages, its disposition by the plaintiff could not operate as a fraud upon defendants. (Freeman on Executions, sec. 136; *Derby v. Weyrich,* 8 Neb. 174, 30 Am. Rep. 827; *Union Pac. Ry. Co. v. Smersh,* 22 Neb. 751, 3 Am. St. Rep. 290, 36 N. W. 139.) The drawing of the money by Trevitic, and his holding it for the accommodation of the plaintiff, it not appearing that there were any dealings between plaintiff and Trevitic, or that Trevitic had

or claimed to have any interest in or lien upon the money, could hardly be called a "commingling." Trevitic did not hold any other money or property of the plaintiff. Suppose plaintiff had given his wife or one of his children an order to draw his wages; would that have been a commingling? The object of the statute was to preserve, for the support of the debtor and his family, a portion of his earnings, and to the accomplishment of this end the statute should receive a liberal construction. The beneficient intention of the legislature must not be defeated by a strained or technical construction. This rule of construction seems to have been quite generally recognized in this class of cases. (Freeman on Executions, sec. 208; *In re McManus,* 87 Cal. 292, 22 Am. St. Rep. 250, and note, 25 Pac. 413; *Montague v. Richardson,* 24 Conn. 347, 63 Am. Dec. 173; *Kuntz v. Kinney,* 33 Wis. 514; *Kenyon v. Baker,* 16 Mich. 373, 97 Am. Dec. 373; *Bevan v. Hayden,* 13 Iowa, 122.) The case of *Wooster v. Page,* 54 N. H. 125, is cited by respondents in support of their contention that the wages of the plaintiff lost the privilege of exemption by reason of the payment of the same to Trevitic, at the request of the plaintiff. The case of *Wooster v. Page* does not seem to go so far as claimed by the respondents, but would seem to favor that view. The court in that case rests its decision largely upon the decision of the same court in the case of *Morse v. Towns,* 45 N. H. 185. In the latter case (as cited by the court in *Wooster v. Page*) it seems that "Towns having enlisted, and received from the town of Pembroke a bounty of $200, went away to the wars, leaving the money with his wife, for the support of herself and their two children. The wife used a part of it, and, of the rest, put into the hands of the trustee $150, to be returned from time to time as needed for the support of the family; and for this sum the trustee gave his note, payable to her or her order. The trustee stated that he took the money expressly as the bounty money of the husband, and that the wife had no other means of support. The trustee was held chargeable, on the ground that the bounty, having been paid over to the volunteer, was no longer 'bounty,' and as such exempt, but was simply 'money,' not exempt." Does this construction of a statute, intended by the legislature to encourage and uphold patriotism, to secure from

the humiliation of poverty and want the wife and children of the soldier, who has voluntarily offered up his life for his country, carry out the intention of the lawmakers? We think not. In the case of *Rutter v. Shumway*, 16 Colo. 95, 26 Pac. 321, the supreme court of Colorado say: "It is claimed by counsel for plaintiff in error that the proper construction of the act of 1885 is that the wages of the debtor are exempt from garnishment while they remain in the hands of the employer, before payment, but not afterward" The act declares: "There shall be exempt from levy under execution, attachment or garnishment the wages and earnings of any debtor, to an amount not exceeding one hundred dollars, earned during the thirty days next preceding such levy," etc. (literally the same as the Idaho statute). The language is unconditional and absolute, that the wages "shall be exempt from levy under execution, attachment or garnishment," and the courts cannot justly add words which would tend to defeat or restrict the manifest purpose of the statute. So long as the wages or earnings of the debtor are capable of identification, he is entitled to have them exempt, according to the terms and provisions of the statute. We prefer the broad humanity of the "Cowboy Law" to the cold and technical construction which would make the intended beneficence of the law a mockery and delusion, and take the bread of the soldier and the wage-earner from the mouths of his wife and children to glut the maw of an insatiate creditor. The judgment of the district court is reversed, and judgment ordered to be entered for plaintiff for the sum of sixty-six dollars and twenty-five cents, and costs, which the clerk of the court below will enter in his judgment docket immediately on receipt of the *remittitur* from this court, and issue execution thereon.

Sullivan, C. J., and Morgan, J., concur.