(No. 7217. December 15, 1944.)

A. W. EDWARDS, Respondent, v. REX TENNEY, H. C. TENNEY and JANE DOE TENNEY, husband and wife, Appellants.

(154 P. (2d) 143.)

Everett E. Hunt for appellants.

Bandelin & Bandelin and W. F. McNaughton for respondent.

HOLDEN, C. J.—July 9, 1917, William Edwards of Bonner County, Idaho, purchased the real property involved in this suit from the Humbird Lumber Company. At his request the deed conveying the property so purchased was made to a brother, A. W. Edwards, residing at

Aroostock County, Maine. After execution and delivery to William Edwards, the deed was recorded in the office of the County Recorder of Bonner County. William Edwards, after the deed was recorded, immediately mailed it to his brother, A. W. Edwards. By his letter of transmittal, William Edwards, in substance, explained the deed was made as a gift, but that he, William, was to have the use and occupancy of the property so long as he lived, and would pay the taxes and, accordingly, William so occupied the property and paid the taxes levied thereon. Many years thereafter, to wit, September 25, 1940, by written agreement, William Edwards contracted to sell appellants the following described real and personal property (the real property being the identical property covered by the deed from the Humbird Lumber Company to A. W. Edwards) :

Northwest Quarter (NW¼) of Section Twenty-one (21) Township Fifty-six (56) North, Range Two (2), W. B. M. lying and being North and West of the Northern Pacific Railway right-of-way, containing 63 acres, more or less; together with certain described livestock and farm equipment.

At the same time and as a part of the same transaction, William Edwards executed to appellants a warranty deed to the above described real property as well as a bill of sale to the above mentioned personal property and deposited the same with Hon. Everett E. Hunt as escrow holder. And while the written contract to sell the real and personal property fixed a consideration of $3,500.00, the deed recites a cash consideration of $10.00, "and other valuable considerations."

About three years after the execution of the above mentioned contract, bill of sale and deed, to wit, the 7th day of September, 1943, William Edwards died at Sandpoint, Idaho.

September 16, 1943, A. W. Edwards filed the following complaint in the District Court of the Eighth Judicial District of the State of Idaho in and for the County of Bonner, against Rex Tenney, H. C. Tenney and Jane Doe Tenney, husband and wife, and Joseph Chondick:

"That plaintiff is now and for more than thirty years last past, has been a resident of Aroostock County, State of Maine.

"That the plaintiff above named, is now, and since the

9th day of July, 1917 has been, the owner, and in possession of, subject to the right of his brother William Edwards, of Sagle, Idaho, to a life estate therein, that certain parcel of land in Bonner County, Idaho described as follows, to-wit:

"All of the Northwest Quarter of Section Twenty-one, Township fifty-six North, Range Two, W. B. M. lying and being North of the Northern Pacific Railway Right-of-Way, containing 63 acres, subject to easements and reservations. (Being the same real property described in the sale contract.)

"That William Edwards died at Sandpoint, Idaho, on the 7th day of September, 1943 and that he, his heirs, successors or assigns have no further right, title nor interest in and to said property.

"That the said defendants claim and assert an interest therein adverse to the plaintiff, and that the claims of said defendants are without any right whatever, and that the said defendants have not, nor have any of them, any estate, right, title or interest whatever, in said land or premises, or any part thereof."

October 30, 1943, Rex Tenney, H. C. Tenney and Jane Doe Tenney answered, specifically denying the material allegations of the complaint and then and by what is called "an affirmative defense" (in legal effect a cross-complaint to quiet title), alleged as follows:

"That H. C. Tenney, Rex Tenney, and Jane Doe Tenney are residents of Bonner County, State of Idaho.

"That the defendants H. C. Tenney and Rex Tenney are the owners of the real estate heretofore described by virtue of the fact that on the 25th day of September, 1940, the said defendants, H. C. Tenney and Rex Tenney, purchased from A. William Edwards all of the real estate described in plaintiff's complaint. That said purchase was evidenced by a Warranty Deed made, executed and delivered by A. William Edwards to the defendants H. C. Tenney and Rex Tenney, and that said Warranty Deed is of record in the office of the County Recorder, Bonner County, State of Idaho, being recorded in Book 66 of Deeds at page 639, records of the County Recorder of Bonner County, State of Idaho. That a copy of said Warranty Deed is attached hereto, incorporated herein, marked Defendants' Exhibit "A" and made a part of this Answer by reference.

"That for more than 26 years prior to the filing of the complaint herein, these answering defendants and their predecessors in interest have been in possession of said premises, holding the same adverse to all of the world and during said period of time, have paid all taxes and assessments levied against said premises and have made improvements thereon at their own expense in an amount of not less than Three Thousand ($3,000.00) Dollars. That the plaintiff herein has never at any time been in possession of said premises or any part thereof nor has the said plaintiff paid any taxes or assessments thereon nor has the said plaintiff ever at any * prior to the filing of his complaint herein, claimed ownership in and to said premises or any part thereof." [*Sic.]

The main suit and cross-suit were tried to the court January 5, 1944. February 26, 1944, the court made and filed findings of fact and conclusions of law. The findings pertinent here are:

"That the plaintiff (respondent A. W. Edwards) above named, is now, and since the 9th day of July, 1917 has been, the owner of, subject to the right of his brother, William Edwards, of Sagle, Idaho to a life estate therein, that certain parcel of land in Bonner County, Idaho described as follows, to-wit: (Then follows a description of the real property involved in this suit.)

"That William Edwards died at Sandpoint, Idaho on the 7th day of September, 1943 and that he, his heirs, successors or assigns have no further right, title nor interest in and to said property. That William Edwards purchased said property for his brother, A. W. Edwards, to reward his brother for the care said brother furnished his parents, and for the further purpose of depriving his wife of any interest she might have had in said property.

"That the said defendants claim and assert an interest therein adverse to the plaintiff, and that the claims of said defendants are without any right whatever, and that the said defendants have not, nor have any of them, any estate, right, title or interest whatever, in said land or premises, or any part thereof.

"That no service of copy of summons and complaint, in this action, was had upon the defendant, Joseph Chondick.

"That the defendants, Rex Tenney and H. C. Tenney received a deed to said property, executed by William Ed-

wards, who signed his name as—A. William Edwards; that said deed is of record in the office of the County Recorder of Bonner County, State of Idaho, being recorded in Book 66 of Deeds, at Page 639. That said deed was delivered after the death of William Edwards. That A. W. Edwards and William Edwards are not one and the same person. . . ."

"That the affirmative defense of defendants as to acquiring title by adverse possession should be denied. That said premises were not held adversely to the plaintiff, A. W. Edwards, for a period of more than twenty-six (26) years prior to the filing of the complaint herein by the answering defendants and their predecessors in interest, nor have said premises been adversely held by defendants or their predecessors in interest for a period of five (5) years.

"That taxes and assessments were paid on said premises by the said William Edwards pursuant to a life estate agreement and understanding between A. W. Edwards and William Edwards. . . ."

February 26, 1944, a decree was rendered and entered quieting title to the real property in respondent, from which the Tenneys prosecuted an appeal to this court.

■ While, and as will have been noted, appellants did not plead a resulting trust, it is contended here that

"Where one pays the purchase price for real property, though title be taken in the name of another a trust arises, impressed upon the land, in favor of such party paying the purchase price," citing *Rexburg L. Co. v. Purrington,* 62 Ida. 461, 469, 113 P. (2d) 511 and *Pittock v. Pittock,* 15 Ida. 426, 98 P. 719. While that, broadly speaking, is the general rule and to which we, of course, adhere, still and nevertheless, that a trust resulted, under such circumstances, may be rebutted. On this point, we quote 2 Bogert, *Trusts and Trustees,* p. 1360:

"The inference of an intent to have a trust which the courts draw from the acts of the payer in paying the price and taking title in another is *not a conclusive inference.* It is an inference or presumption of fact and not of law. It may be rebutted or overcome by other evidence, or corroborated and strengthened by further testimony."

We also direct attention to *Scott on Trusts,* Vol. 3, sec. 441:

"Sec. 441. Rebutting Resulting Trusts. Although the

fact that A pays the purchase price for a conveyance of property to B is sufficient to raise an inference that A did not intend that B should have the beneficial interest in the property, the inference may be overcome by evidence that A did in fact intend that B should have the beneficial interest. Where B is so related to A as to be a natural object of his bounty, indeed, the inference is that A intended to make a gift to B. But even if B is not so related to A, the circumstances may indicate that A intended to make a gift to him."

Appellants pleaded title by prescription in the court below and here contend that they and their predecessors in interest have "possessed the property in question from 1917 to 1943 inclusive, adversely against all the world" and "paid all taxes and assessments levied against the same for that period of time," but the trial court found the property in question was not occupied nor held adversely to respondent and, further, that the taxes levied against the property and paid by William Edwards were paid pursuant to an understanding between him and respondent.

The Supreme Court of Oregon in *Laurance v. Tucker*, 85 P. (2d) 374, 378, held that:

"In order to establish title by adverse possession, it is necessary to allege and establish by clear and positive proof an actual, open, notorious, exclusive and hostile possession for the full statutory period, and, generally, it is necessary to allege and prove that the possession was taken and held under a claim of ownership or claim of right. The mere fact that one is in possession of land, no matter how long continued, will not bar a recovery by the true owner thereof, unless the occupant asserts an exclusive ownership in himself, for, in the absence of such a claim, the law will presume his possession to be in subservience to the legal title. 1 R. C. L., Title, Adverse Possession, sec. 18, pp. 705, 706."

And in *Janke v. McMahon*, (Cal.) 133 P. 21, 23, the court held that

"the burden of proof is upon the person in possession and claiming against the holder of the legal title to show that his occupancy is hostile and not subordinate to the legal title. He must prove all the essential elements of adverse possession." (Citing *Sharp v. Daugney*, 33 Cal. 505; *De Frieze v. Quint*, 94 Cal. 653, 30 P. 1, 28 Am. St. Rep.

151; *Ball v. Kehl,* 95 Cal. 606, 30 P. 780; *Baldwin v. Temple,* 101 Cal. 396, 35 P. 1008; 2 Am. & Eng. Ency. of Law and Practice, 363.) It is equally true that possession may be open and notorious, and still not adverse. (*Thompson v. Felton,* 54 Cal. 547; *Sheils v. Haley,* 61 Cal. 157; *Rix v. Horstmann,* 93 Cal. 502, 29 P. 120; *Baldwin v. Temple,* supra; *Woodward v. Faris,* 109 Cal. 12, 41 P. 781; *Peters v. Gracia,* 110 Cal. 89, 42 P. 455.")

*Janke v. McMahon,* supra, above quoted, was cited and adhered to in *Enos v. Murtaugh,* (Cal.) 117 P. (2d) 905, 907. In *Comstock v. Finn,* (Cal.) 56 P. (2d) 957, 959, it was held that

"Where possession of occupant of premises lacks hostility and adversity to the title of the owner, claim to title of land by occupant fails." (Sec. 4, syllabus, which correctly states the holding of the court.)

As will be observed, and as hereinbefore pointed out, the trial court found: "That William Edwards purchased said property for his brother, A. W. Edwards, to reward his brother for the care said brother furnished his parents and for the further purpose of depriving his wife of any interest she may have had in said property," and that the taxes paid by William Edwards were paid pursuant to an agreement or understanding between William Edwards and his brother, respondent A. W. Edwards, and, further, the trial court also found the property was not occupied or held adversely to respondent in other words, and in effect, the court found the property was occupied by William Edwards with the consent of respondent pursuant to the understanding had between William Edwards and respondent.

This court held in *Hall v. Taylor,* 57 Ida. 662, 668, 67 P. (2d) 901, that:

"An adverse right is not originated by consent but rather against the will and without the consent of the true owner, and generally rests on an original trespass, which matures into a property right by reason of the true owner allowing the claimant or trespasser to continue the adverse use and possession uninterruptedly and with assertion of right until the statutory period has run, which bars the true owner from either asserting or defending his right to the property."

This court is firmly committed to the rule that findings supported by substantial evidence, as in the case

at bar, are controlling on appeal, and that where there is sufficient evidence, if uncontradicted, to support the findings the findings will not be disturbed. (*Dickey v. Clarke*, 65 Ida. 247, 142 P. (2d) 597, 602; *Condie v. Swainson*, 62 Ida. 472, 479, 112 P. (2d) 787; *Bussell v. Barry*, 61 Ida. 350, 353, 102 P. (2d) 280; *Aslett v. Evans*, 48 Ida. 206, 209, 280 P. 1036; *Fairbairn v. Keith*, 47 Ida. 507, 511, 276 P. 966; *Heylman v. Idaho Continental Min. Co.*, 43 Ida. 129, 141, 250 P. 1081; *Clegg v. Eustace*, 40 Ida. 651, 655, 237 P. 438; *Clinton v. Utah Const. Co.*, 40 Ida. 659, 690, 237 P. 427.

And this court held in *Re Estate of Randall*, 58 Ida. 143, 146, 70 P. (2d) 389, 390, that where the facts "might very well lead different minds to reaching different conclusions upon the issue presented; and where such is the case, however meager the evidence, if it is of a substantial nature and character, the findings of the triers of fact should prevail. (*McKissick v. Oregon Short Line R. Co.*, 13 Ida. 195, 89 P. 629; *Fleenor v. Oregon Short Line R. Co.*, 16 Ida. 781, 803, 102 P. 897; *Denton v. City of Twin Falls*, 54 Ida. 35, 43, 28 P. (2d) 202; *Call v. City of Burley*, 57 Ida. 58, 62 P. (2d) 101, 105; *Dickey v. Clark*, supra.

But it was insisted at the bar by appellants that if this court should affirm the judgment of the trial court, then that they should be awarded a lien on the real property for the value of the improvements they claim to have made and also for the amount paid on the purchase price. The record discloses appellants went into possession shortly after September 25th, 1940, and that they have enjoyed, used and occupied the property ever since. And the record further discloses appellants entered into the contract to purchase the property with notice that William Edwards had made a gift of the property to his brother, A. W. Edwards. And, finally, appellants did not either plead or claim a lien for the value of any improvements made nor for any part of the purchase price which may have been paid. In fact, when an effort was made by respondent to prove what, if anything, appellants paid under the written contract, it was objected to by appellants "for the reason that it is immaterial whether he (H. C. Tenney, one of the appellants then under examination) made any payments or didn't make any."

It follows the judgment must be affirmed and it is so ordered, with costs to respondent.

Budge, Givens and Dunlap, JJ., concur.

Ailshie, J., deeming himself disqualified, did not sit at the hearing or participate in the decision in this case.